UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CLIFFORD MEYERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:19 CV1522 ACL |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM**

Plaintiff Clifford Meyers brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his application for Disability Insurance Benefits under Title II of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite Meyers' severe impairments, he was not disabled as he had the residual functional capacity ("RFC") to perform past relevant work existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).   A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

**I.  Procedural History**

Meyers filed his application for benefits on September 15, 2016, claiming that he became unable to work on October 1, 2015.   (Tr. 179-87.)   Meyers alleged disability due to pain in his

lower back, spine, legs, and side; tingling in his legs; and loss of feeling in his knees and hands.

(Tr. 234)   Meyers was 44 years of age at his alleged onset of disability date.   (Tr. 22.)   His

application was denied initially.   (Tr. 116-20.)   Meyers' claim was denied by an ALJ on

October 22, 2018.   (Tr. 14-23.)   On March 31, 2019, the Appeals Council denied Meyers' claim

for review.   (Tr. 1-4.)   Thus, the decision of the ALJ stands as the final decision of the

Commissioner.   *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Meyers first argues that the ALJ "improperly discounted the Plaintiff's

pain complaints."   (Doc. 19 at p. 6.)   He next contends that "the RFC is not supported by

substantial evidence."   *Id.* at p. 12.

## II.   The ALJ's Determination

The ALJ first found that Meyers meets the insured status requirements of the Act through

December 31, 2022.   (Tr. 16.)   She next found that Meyers has not engaged in substantial

gainful activity since October 1, 2015.   *Id.*   In addition, the ALJ concluded that Meyers had the

following severe impairment: bilateral sacroiliac joint[1] fusion.   *Id.*   The ALJ found that Meyers

did not have an impairment or combination of impairments that met or medically equaled the

severity of one of the listed impairments.   (Tr. 17.)

As to Meyers's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned
> finds that the claimant has the residual functional capacity to
> perform light work as defined in 20 CFR 404.1567(b) except
> lifting 20 pounds occasionally and 10 pounds frequently; carrying
> 20 pounds occasionally and 10 pounds frequently; sitting for 6
> hours, standing for 6 hours and walking for 6 hours in a regular 8-
> hour workday and he can push and/or pull as much as he can lift

---

[1]The sacroiliac joint is located between the iliac bones and the sacrum, connecting the spine to
the hips.

> and/or carry.   The claimant can occasionally climb ramps and
> stairs, never climb ladders, ropes, or scaffolds, balance
> occasionally, stoop occasionally, kneel occasionally, crouch
> occasionally and crawl occasionally.   The claimant can never
> work at unprotected heights, never work around moving
> mechanical parts, and no concentrated exposure to extreme cold or
> vibration.

(Tr. 17-18.)

The ALJ found that Meyers had no past relevant work, but was capable of performing

jobs that exist in significant numbers in the national economy.   (Tr. 22.)   The ALJ therefore

concluded that Meyers was not under a disability, as defined in the Social Security Act, from

October 1, 2015, through the date of the decision.   (Tr. 23.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability
> insurance benefits protectively filed on September 15, 2016, the
> claimant was not disabled under sections 216(i) and 223(d) of the
> Social Security Act.

*Id.*

## III.   Applicable Law

### III.A.  Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial

evidence on the record as a whole.   42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389,

401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).   Substantial evidence is less

than a preponderance of the evidence, but enough that a reasonable person would find it adequate

to support the conclusion.   *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).   This

"substantial evidence test," however, is "more than a mere search of the record for evidence

supporting the Commissioner's findings."   *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir.

2007) (internal quotation marks and citation omitted).   "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis."   *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1.    The credibility findings made by the ALJ.

2.    The plaintiff's vocational factors.

3.    The medical evidence from treating and consulting physicians.

4.    The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5.    Any corroboration by third parties of the plaintiff's impairments.

6.    The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted).   The Court must also consider any evidence which fairly detracts from the Commissioner's decision.   *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999).   However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole.   *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)).   "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported

an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

### III.B.  Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905.   A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country."   42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.   20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).   First, the Commissioner will consider a claimant's work activity.   If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.   20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities."   *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003).   "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do

basic work activities."   *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."   20 C.F.R. § 416.921(b).   These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.   *Id.* § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).   "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work."   *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.   If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.   20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.   20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4).   "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations."   *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks

omitted); *see* 20 C.F.R. § 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. § 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.   *See id.*   If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience.   *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000).   The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.   *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v).   If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.   If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.   20 C.F.R. § 416.920(a)(4)(v).   At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.   *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### IV.   Discussion

Meyers claims that the ALJ erred in evaluating his subjective pain complaints, and in determining his RFC.   The undersigned will discuss these claims in turn.

### 1.   Subjective Complaints

When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions.   *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019); *see Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); 20 C.F.R. § 404.1529(c).   If the ALJ finds the statements to be inconsistent with the evidence of record, she must make an express determination and detail specific reasons for the weight given the claimant's testimony. SSR 16-3p, 2017 WL 5180304, at *10; *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012); *Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991).   The ALJ "must set forth the inconsistencies in the evidence presented and discuss the factors set forth in *Polaski*[.]"   *Cline*, 939 F.2d at 565; *see also Renstrom,* 680 F.3d at 1066; *Beckley v. Apfel*, 152 F.3d 1056, 1059-60 (8th Cir. 1998).   While an ALJ need not explicitly discuss each *Polaski* factor, she nevertheless must acknowledge and consider these factors before discounting a claimant's subjective complaints.   *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010).

Meyers argues that the ALJ improperly evaluated his activities of daily living, usage of pain medications, and the objective medical evidence in discrediting his subjective complaints.

The ALJ began her analysis by summarizing Meyers' testimony regarding his pain and limitations.   Meyers testified that he lives with his girlfriend and his three youngest children, ages 8, 6, and 5.   (Tr. 18, 69-70.)   The girlfriend works outside the home.   (Tr. 18, 70.) Meyers testified that his most recent job was a part-time job as a warehouse manager, which ended when the warehouse was sold and he was laid off.   (Tr. 18, 71, 79-80.)   He indicated that he has never worked full-time and has held a number of different jobs working no more than 30 hours a week.   (Tr. 18, 77-78.)   Meyers testified that he could not work because of low back pain, which has been worsening over time.   (Tr. 18, 79.)   He takes pain medications that make him sleepy and dizzy.   (Tr. 18, 81.)   During the day, he testified that he watches the children and makes sure they get on the school bus by watching from the door of his home.   (Tr. 18, 82.) Meyers stated that his eight-year-old son "basically does everything" when his girlfriend is working and Meyers provides essentially no care to the children.   (Tr. 82-83.)   After the children go to school, he props himself up in his bed and watches television all day.   (Tr 85.) He takes care of his personal needs, but there are many household chores he is unable to perform due to pain.   (Tr. 18, 83.)   Meyers testified that he can only walk about thirty feet and does not believe he could regularly lift more than five pounds.   (Tr. 18, 94-95.)

The ALJ next discussed the medical evidence.   The relevant medical evidence is summarized as follows:

Meyers underwent a partial nephrectomy[2]  in July 2015 for treatment of renal cancer.[3] (Tr. 19, 312.)   His complaints of back pain preceded his cancer diagnosis and treatment.   (Tr. 19, 309.)

---

[2]Removal of one of the kidneys.   *See Stedman's* at 1289.
[3]Meyers filed a prior application for benefits based on his renal cancer.   (Tr. 19.)

At a June 2015 emergency room visit, Meyers reported back pain that had been occurring off and on since he was seventeen.   (Tr. 309.)   He reported that the prior episode of back pain resulted in him being diagnosed with renal cancer following a visit to St. Mary's hospital a few months earlier.   *Id*.   X-rays of the thoracic and lumbar spine were normal.   (Tr. 19, 331.)

Meyers sought emergency room treatment on March 29, 2016, reporting back pain after unloading trucks at work.   (Tr. 19, 369.)   On examination, tenderness was noted but no motor or sensory deficits.   *Id.*

Meyers presented to Lauren A. Waible, D.O., on March 30, 2016, with complaints of low back pain after lifting a five-pound box while twisting.   (Tr. 19, 775.)   On examination, Meyers was unable to sit or perform right straight leg raise test due to pain, but the left side straight leg raise test was normal; paraspinal tenderness to palpation was noted at L3-L4; and he had normal strength, a normal gait, and normal sensory exam.   *Id.*   Dr. Waible scheduled a CT scan to follow-up on his kidney and evaluate his thoracic and lumbar spine.   (Tr. 777)   She indicated that Meyers was able to return to work without restrictions.   (Tr. 19, 778.)   Meyers underwent a CT scan of the abdomen and pelvis on April 14, 2016, which showed no evidence of recurrent or metastatic disease, but revealed bilateral sacroiliac joint fusion.   (Tr. 19, 321.)   On April 22, 2016, Meyers reported that his back pain had not improved, and that he was missing work as a result.   (Tr. 19, 771.)   Dr. Waible noted extreme tenderness of the lumbosacral spine, but was unable to fully examine Meyers' spine due to pain.   (Tr. 19, 772.)   Dr. Waible diagnosed Meyers with ankylosing spondylitis[4] involving the sacroiliac junction based on the CT scan.   *Id.*

---

[4]Inflammatory arthritis, resembling rheumatoid arthritis, which causes pain and stiffness in the spine.   It can cause the vertebra to fuse together.   *See Stedman's* at 1813.

She noted that Meyers was taking too much Tylenol.  *Id.*  Dr. Waible prescribed Meloxicam[5] and Tramadol[6] and referred Meyers to physical therapy.  (Tr. 19, 773.)

At his initial physical therapy evaluation in June 2016, Meyers reported that he had to lift a lot at his job at JC Penny stocking, but was able to push through the pain.  (Tr. 19, 569.)  He was independent with his activities of daily living, but avoided activities around the house due to pain and had difficulty leaning forward to tie his shoes.  *Id.*  On examination, Meyers exhibited tenderness to superficial touch and guarding throughout musculature.  *Id.*

On June 17, 2016, Meyers reported that physical therapy helps while there, but the pain returns shortly thereafter and affected his work.  (Tr. 19, 765.)  Dr. Waible noted Meyers had decreased range of motion of the lumbar spine, and a normal gait.  (Tr. 19, 766.)  Dr. Waible prescribed Vicodin,[7] and instructed him to continue with physical therapy and home exercises.  (Tr. 19, 767.)  On July 5, 2016, Meyers reported his pain had decreased after starting Vicodin, and he was able to sit down, but he continued to have trouble with playing with his children and working.  (Tr. 19, 760.)  In September 2016, Meyers reported that he had been continuing physical therapy and home exercises, which was helping "a lot."  (Tr. 19, 756.)  He indicated that his medication was "great," and he was taking his "kids out more," and was able to sit during the examination.  *Id.*  On examination, Dr. Waible noted Meyers had an antalgic gait, full strength in the bilateral upper and lower extremities, and limited range of motion in his back.  (Tr. 757.)

---

[5]Meloxicam is a non-steroidal anti-inflammatory drug indicated for the treatment of arthritis.  *See* WebMD, http://www.webmd.com/drugs (last visited July 16, 2020).
[6]Tramadol is an opioid analgesic indicated for the treatment of moderate to moderately severe pain.  *See* WebMD, http://www.webmd.com/drugs (last visited July 16, 2020).
[7]Vicodin is a combination of acetaminophen and hydrocodone (an opioid pain medication).  *See* WebMD, http://www.webmd.com/drugs (last visited July 16, 2020).

A physical therapy treatment note from September 2016 indicated that Meyers continued to have significant difficulty after "loading days" where he had to do a lot of lifting at work. (Tr. 20, 585.)

On an October 26, 2016 follow-up with Dr. Waible, Meyers reported that his back was "doing well."  (Tr. 753.)   He was continuing with physical therapy, and he was able to sit and play with his kids.  *Id*   On examination, Meyers had full strength, no weakness, and an antalgic gait.  (Tr. 754.)   Dr. Waible prescribed a right wrist splint due to Meyers' reports of intermittent paresthesia in his right thumb and index finger.  (Tr. 755.)   In November 2016, Meyers reported that he was "learning to tolerate the pain."  (Tr. 748.)   Vicodin provided him with six hours of relief with each dosage.  *Id.*   He was able to sit and play with his children, although work continued to be a challenge.  *Id.*   Dr. Waible noted an antalgic gait, limited range of motion, and tenderness to light palpation of the lumbar spine.  (Tr. 749.)   In December 2016, Meyers reported that his pain was "alright."  (Tr. 744.)   He had stopped going to therapy due to the holidays and reported increased stiffness and tightness.  *Id.*   On January 30, 2017, Meyers reported that he was not going to physical therapy, but he was doing home exercise and taking Vicodin.  (Tr. 740.)   On examination, he had full strength, a normal gait, and tenderness to palpation of the lower back.  (Tr. 741.)   On February 27, 2017, Meyers was back in physical therapy and reported it was going well.  (Tr. 737.)   He indicated that his pain medications were helping, and reported a "tolerable" pain level of six out of ten.  *Id.*   Meyers had no pain with palpation of the lower back or any other abnormalities on examination at his visits in February 2017 or March 2017.  (Tr. 738.)

At a March 9, 2017 physical therapy visit, Meyers reported that he could stand for up to five to six hours at work and sit for "a few hours" with "only some discomfort."   (Tr. 20, 620.) He avoided most lifting.   *Id.*

In April 2017, Dr. Waible noted that Meyers had submitted two urine samples that tested negative for opiates when he stated he had been taking his prescribed opiates.   (Tr. 729.)   When confronted, Meyers stated that he had only been taking the pain medication "intermittently when it rains or when he has to for work purposes."   *Id.*   He last took a dosage three days prior.   *Id.* Meyers also reported that he had a job interview at Barnes coming up.   *Id.*   In June 2017, Meyers reported that he had last taken his pain medication five days prior and was no longer going to physical therapy due to insurance issues.   (Tr. 724.)   Dr. Waible stated that Meyers "continues to improve."   *Id.*   She referred him to a chiropractor.   (Tr. 726.)   In July 2017, Meyers was "walking and playing with children."   (Tr. 720.)   He was working at JC Penney but trying to get a night job at Barnes.   *Id.*   He was taking his pain medication twice a day.   *Id.* On August 25, 2017, Meyers reported that his "back is ok."   (Tr. 716.)   He was seeing a chiropractor twice a week, walking and playing with his children, and doing home exercises.   *Id.* At his next visit in September 2017, Meyers indicated that his chiropractor "states he shouldn't work" because his "back is too tight."   (Tr. 712.)   Meyers reported that his pain has "improved a lot," and he has "relieved the majority of the pain."   *Id.*

At a behavioral health consultation later that week, Meyers reported that, on a typical day, he walks the neighborhood, walks his son to the bus stop, does chores at home for thirty to sixty minutes at a time, picks his son up from the bus stop, helps his son with homework, takes his dogs to the park, watches movies, and plays with his son.   (Tr. 710.)

At follow-up visits with Dr. Waible in October 2017, December 2017, and January 2018, Meyers reported his pain level was unchanged on his medication regimen of Vicodin two times a day, and Dr. Waible noted only pain with palpation of the left sacroiliac joint on examination. (Tr. 697-708.)   In April 2018, Meyers reported he had started a new landscaping job, which he described as his "dream job."   (Tr. 688.)   His pain was "manageable with pain medications." *Id.*   Meyers reported that he was not lifting heavy objects and was "only weed whacking at this time."   *Id.*   He was taking half a pill of Vicodin twice a day and did not want to change his medications.   *Id.*   On May 16, 2018, Meyers reported he had left his landscaping job due to an inability to lift due to pain.   (Tr. 685.)   At a June 2018 follow-up, Meyers reported that walking about one hour helped his pain, and that he experienced increased pain with sitting and leaning. (Tr. 678.)

After discussing the medical evidence set out above, the ALJ concluded that Meyers' statements regarding his pain and limitations were not entirely consistent with the medical evidence and other evidence of record.   (Tr. 20.)   She first stated that Meyers' activities of daily living "are relatively unimpaired."   *Id.*   For example, the ALJ noted Meyers is able to care for his three small children.   *Id.*

Meyers argues that the ALJ's finding that his activities of daily living are relatively unimpaired is not supported by the record.   Meyers points to his hearing testimony that he provides no care to his children other than watching them get on the bus from his house, and that his eight-year-old helps him.

It is true Meyers testified that he provides no care to his children and lies down and watches television all day.   The medical evidence, however, reveals that Meyers engaged in greater activities than what he described in his testimony.   With regard to the care of his

children, Meyers initially reported difficulty playing with his children to Dr. Waible in July of 2016.  (Tr. 760.)   By September 2016, he reported a great reduction in his pain from medication and indicated he was taking his "kids out more."   (Tr. 756.)   In October and November 2016, he reported to Dr. Waible his pain medication allowed him to sit and play with his children.   (Tr. 753, 748.)   Meyers reported he was "walking and playing with children" in July and August of 2017.  (Tr. 720, 716.)   In September 2017, Meyers reported that, on a typical day, he walks the neighborhood, walks his son to the bus stop, does chores at home for thirty to sixty minutes at a time, picks his son up from the bus stop, helps his son with homework, takes his dogs to the park, watches movies, and plays with his son.  (Tr. 710.)   Additionally, in March 2017, Meyers reported that he could stand for up to five to six hours at work and sit for "a few hours" with "only some discomfort."   (Tr. 20, 620.)   In April 2018, Meyers started a new landscaping job where he was not doing heavy lifting but was weed whacking.   (Tr. 688.)   The next month, Meyers reported that he was walking for about an hour, which helped his pain.   (Tr. 678.)

The ALJ's finding that Meyers' activities of daily living are "relatively unimpaired" is supported by the record.   The activities Meyers described to medical professionals are inconsistent with his allegations of disabling pain.   *See Haley v. Massanari,* 258 F.3d 742, 748 (8th Cir. 2001) (Significant daily activities may be inconsistent with claims of disabling pain). The ALJ did not err in evaluating Meyers' activities of daily living.

Meyers next contends that the ALJ erred in discussing his usage of pain medications. He claims that the ALJ failed to consider the side effects of his pain medications.

The ALJ discussed Meyers' use of pain medication, including the opioid Vicodin, extensively.   The ALJ acknowledged Meyers testified that his medications make him feel "sleepy and dizzy."   (Tr. 18.)   She found that Meyers' pain medications "tend to provide

effective pain relief, but he regularly skips doses and tried to only take the narcotic medication when absolutely needed."   *Id.*

The medical record is replete with evidence that Meyers' pain greatly improved with medication and Meyers does not dispute this.   For example, in November 2016, Meyers reported Vicodin provides him with six hours of pain relief with each dosage (Tr. 748); and in February 2017, he indicated that his pain medications brought his pain down to a "tolerable" pain level of six out of ten.   (Tr. 737.)   In April 2017, Meyers reported that he had only been taking the pain medication "intermittently when it rains or when he has to for work purposes," and that he had last taken a dosage three days prior.   (Tr. 729.)   Meyers continued to take his pain medication less often than the three times a day as prescribed through January 2018.   (Tr. 724, 720, 716, 712, 705, 700, 697.)   In April 2018, he reported he was only taking half of a pill of Vicodin twice a day, which controlled his pain.   (Tr. 688.)

The ALJ properly discussed Meyers' usage of pain medication.   She accurately pointed out that Meyers reported significant pain relief, even when taking much less than the prescribed dosage of medication.   It is well-settled that "[a] failure to follow a recommended course of treatment also weighs against a claimant's credibility."   *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) (citation omitted).   Moreover, an impairment that is "controllable or amenable to treatment [does] not support a finding of total disability."   *Bernard v. Colvin*, 774 F.3d 482, 488 (8th Cir. 2014).   The ALJ acknowledged Meyers' testimony that his pain medications caused drowsiness and dizziness.   (Tr. 18.)   The record supports the ALJ's finding that Meyers achieved significant pain relief on low doses of pain medication.

The ALJ also discussed the objective medical evidence.   She stated that the "imaging examinations and therapy reports indicate modest degenerative changes and some muscle

spasms," which is "very different" from Meyers' subjective complaints.   Meyers argues that the ALJ misunderstood the nature of Meyers' impairment—ankylosing spondylosis in the sacroiliac joints—when she referenced the minimal findings on imaging examinations.   Admittedly, the fact that imaging of Meyers' spine revealed "modest degenerative changes" does not detract from the severity of Meyers' sacroiliac joint impairment.   Earlier in her opinion, however, the ALJ acknowledged that the April 2016 MRI revealed bilateral sacroiliac joint fusion, a "chronic condition that will not improve."  (Tr. 21.)   Further, although treatment notes occasionally revealed some abnormalities on examination such as limited range of motion of the lumbar spine and tenderness, on other examinations these findings were absent and Meyers had full strength and range of motion, and a normal gait.   Thus, the ALJ's finding that the objective evidence as a whole did not support the severity of pain and limitations alleged by Meyers is supported by the record.

Finally, the ALJ addressed inconsistencies in the record.   For example, she pointed to the following statements Meyers has made to providers:   On March 9, 2017, he reported that he could stand up to five to six hours at work, and was able to sit for a few hours (Tr. 620); on March 23, 2017, he stated he was able to stand for "prolonged periods" (Tr. 623); and on April 6, 2017, he stated he could sit for approximately one hour before he has to move (Tr. 626).   (Tr. 20.)   The ALJ stated that these statements are inconsistent with Meyers' testimony that he was unable to lift any amount of weight, was only able to walk about thirty feet, and spent all day lying in bed due to pain.   (Tr. 20, 93-94.)

The Court finds that the ALJ properly evaluated Meyers' subjective complaints and found they were inconsistent with the record.   Because the ALJ's determination not to fully credit Meyers' subjective complaints is supported by "good reasons and substantial evidence,"

the Court defers to her determination.   *See Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006).

### 2.  RFC Determination

Meyers next argues that the ALJ's RFC determination is not supported by substantial evidence.   Meyers contends that the ALJ erred in relying on the opinion of a non-examining state agency physician.

It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations.   *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (2001).   "It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC."   *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003).   An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record.   *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).   "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace."   *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).   There is no requirement, however, that an RFC finding be supported by a specific medical opinion.   *See Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012); *Martise v. Astrue,* 641 F.3d 909, 927 (8th Cir. 2011) (An ALJ "is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians.").   Furthermore, "[e]ven though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Cox*, 495 F.3d at 619-20.

Fredric Simowitz, M.D., a state agency physician, completed a Physical Residual Functional Capacity Assessment on November 17, 2016.  (Tr. 109-12.)   He expressed the opinion that Meyers could occasionally lift or carry twenty pounds, and frequently lift or carry ten pounds; stand or walk a total of two hours in an eight-hour workday, and sit a total of six hours in an eight-hour workday; could only occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; could never climb ladders or scaffolds; should avoid concentrated exposure to extreme cold; should avoid even moderate exposure to vibration; and should avoid all exposure to hazards.   *Id.*

The only other opinion evidence in the record was a letter authored by Dr. Waible on January 11, 2017, in which she states Meyers has had ongoing low back pain since she started treating him in October 2015.  (Tr. 747.)   Dr. Waible stated that Meyers' bilateral sacroiliac fusion is a chronic condition that will not improve and causes Meyers a significant amount of pain and "severely limits his ability to sit for any amount of time or perform acts of physical labor."   *Id.*

"It is the ALJ's function to resolve conflicts among the various treating and examining physicians."   *Tindell v. Barnhart,* 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Vandenboom v. Barnhart,* 421 F.3d 745, 749-50 (8th Cir. 2005) (internal marks omitted)).   The opinion of a treating physician will be given "controlling weight" only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."   *Prosch v. Apfel,* 201 F.3d 1010, 1012-13 (8th Cir. 2000).  The record, though, should be "evaluated as a whole."   *Id.* at 1013 (quoting *Bentley v. Shalala,* 52 F.3d 784, 785-86 (8th Cir. 1997)).   The ALJ is not required to rely on one doctor's opinion entirely or choose between the opinions.   *Martise,* 641 F.3d at 927.   Additionally, when a

physician's records provide no elaboration and are "conclusory checkbox" forms, the opinion

can be of little evidentiary value.   *See Anderson v. Astrue,* 696 F.3d 790, 794 (8th Cir. 2012).

Regardless of the decision the ALJ must still provide "good reasons" for the weight assigned the

treating physician's opinion.   20 C.F.R § 404.1527(d)(2).

The ALJ must weigh each opinion by considering the following factors: the examining

and treatment relationship between the claimant and the medical source, the length of the

treatment relationship and the frequency of examination, the nature and extent of the treatment

relationship, whether the physician provides support for his findings, whether other evidence in

the record is consistent with the physician's findings, and the physician's area of specialty.   20

C.F.R. §§ 404.1527(c)(1)-(5), 416 .927(c)(1)-(5).

The ALJ indicated that she was affording "limited weight" to Dr. Waible's January 2017

opinion.   (Tr. 21.)   The ALJ explained that Dr. Waible does not indicate what constitutes "acts

of physical labor."   (Tr. 22.)   She further noted that Meyers has reported that he was capable of

sitting for hours.   *Id.*

The ALJ concluded that Meyers had the RFC to perform a limited range of light work.

(Tr. 17-18.)   Meyers could lift and carry twenty pounds occasionally and ten pounds frequently;

sit for six hours, stand for six hours, and walk for six hours in an eight-hour workday; and had

the additional postural and environmental limitations found by Dr. Simowitz.   *Id.*   The ALJ

explained that this RFC is supported by Dr. Simowitz's opinions and Meyers' statements in

physical therapy that he could sit for "a few hours" and stand up to six hours.   (Tr. 22.)

The undersigned finds that the ALJ properly weighed the opinion evidence in

determining Meyers' RFC.   Although Dr. Waible is a treating physician, the ALJ accurately

noted that her opinion regarding physical labor was vague and of little evidentiary value in

determining Meyers' functional limitations.   As noted by the ALJ, Dr. Waible's statement that Meyers is unable to sit for any amount of time is contradicted by the record.   The ALJ provided good reasons for discrediting the opinions of Dr. Waible.

The ALJ accorded significant weight to the opinions of non-examining state agency physician, Dr. Simowitz.   She did not rely solely on Dr. Simowitz's opinions, as she noted her assessment was also supported by Meyers' own statements to medical providers.   It was proper for the ALJ to consider Dr. Simowitz's opinions along with the rest of the evidence in making the RFC determination.   *See, e.g.*, *Toland v. Colvin*, 761 F.3d 931, 937 (8th Cir. 2014) (noting that state agency medical consultants' opinions supported the RFC finding and stating, "'State agency medical and psychological consultants are highly qualified physicians'" whose expert opinions cannot be ignored by ALJs or the Appeals Council") (quoting SSR 96–6P, 1996 WL 374180, *2 (July 2, 1996)).

Based on the foregoing, the Court finds that the ALJ's RFC determination is supported by substantial evidence in the record as a whole.   The ALJ acknowledged that Meyers experiences pain and limitations from his impairments, but found that the record does not support that they are disabling.   The ALJ's determination is supported by the opinions of Dr. Simowitz, and the treatment notes of Dr. Waible documenting significant pain relief from medication.   It is also consistent with Meyers' own statements to providers about his functional abilities, as well as his ability to work part-time at positions requiring strenuous activities such as weed-whacking during the relevant period.   Meyers failed to demonstrate the presence of greater limitations than those found by the ALJ.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

/s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 18th day of September, 2020.